**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| PRIEST PRYOR, | |
| Plaintiff, | |
| v. | Case No. 16-cv-50105 |
| NEDRA CHANDLER; JOSHUA ALBERTS; JOSH ANDREWS; DANIEL ARTL; MICHAEL ATCHISON; QUENTIN BAILEY; EDDIE BAITY; RUSSELL BAKER; JOHN BALDWIN; SHANE BOYSON; RODNEY BRADY; VALERIE BRIMBLE; SCOTT BUZLAFF; TYLER CROUSE; LUKE CUNNINGHAM; MICHAEL EVANS; TJ FRANCIS; ANN GANGER; S.A. GODINEZ; DAVID GOMEZ; RICHARD GRAVES; PETER GREEN III; TRENT HANRAHAN; JASON HARLAN; LEROY HART; JOSHUA HORTON; DALE HOYLE; LEONTA JACKSON; BRADY JACOBS; TOMASZ JANKOWSKI; CHAD JENKINS; TERRY JENSEN; ALEX JOHNSON; NICK JONES; NICHOLAS KAYS; ZACH LARSON; TYRUS LAZARD; COLTON LOVE; NICHOLAS LUNON; GREG MANZANO; JOE MCCRAY; SCOTT MEYER; TRAVIS MOORE; ADAM MORROW; KEITH MILLIZER; MARK NEWMAN; SCOTT NODINE; JOSHUA PHARES; JOSE PRADO SR.; TIM PRATER; LOUIS SAPIA; WILLIAM SIMESTER; DAVID SKIPWORTH; DAVID SKUTT; JEAN SOLBERG; NATE SPENCE; JACOB STARK; BEN STERCHI; AARON STREIT-COX; CHRISTOPHER TERRY; DONALD THOMAS; JAMES THOMAS; CHRIS TUTTLE; DAVID UNDERWOOD; DALE VANDUSEN; ADAM WALSH; DALE WEIS; JASON WEYMOUTH; LOGAN WOLFE; RYAN WOODS; ROD WORKMAN; DENNIS WOZNIAK; KEN YINGLING; JOSEPH YURKOVICH; CHRIS ZIERMAN; UNKNOWN MEMBERS OF TACTICAL TEAM KNOWN AS "ORANGE CRUSH"; and UNKNOWN SUPERVISORS, | Hon. Frederick J. Kapala<br><br>Hon. Iain D. Johnston<br><br>JURY TRIAL DEMANDED |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiff Priest Pryor, by and through counsel, complains against defendants Nedra Chandler; Joshua Alberts; Josh Andrews; Daniel Artl; Michael Atchison; Quentin Bailey; Eddy Baity; Russell Baker; John Baldwin; Shane Boyson; Rodney Brady; Valerie Brimble; Scott Buzlaff; Tyler Crouse; Luke Cunningham; Michael Evans; TJ Francis; Ann Ganger; S.A. Godinez; David Gomez; Richard Graves; Peter Green III; Trent Hanrahan; Jason Harlan; Leroy Hart; Joshua Horton; Dale Hoyle; Leonta Jackson; Brady Jacobs; Tomasz Jankowski; Chad Jenkins; Terry Jensen; Alex Johnson; Nick Jones; Nicholas Kays; Zach Larson; Tyrus Lazard; Colton Love; Nicholas Lunon; Greg Manzano; Joe McCray; Scott Meyer; Travis Moore; Adam Morrow; Keith Millizer; Mark Newman; Scott Nodine; Joshua Phares; Jose Prado Sr.; Tim Prater; Louis Sapia; William Simester; David Skipworth; David Skutt; Jean Solberg; Nate Spence; Jacob Stark; Ben Sterchi; Aaron Streit-Cox; Christopher Terry; Donald Thomas; James Thomas; Chris Tuttle; David Underwood; Dale Vandusen; Adam Walsh; Dale Weis; Jason Weymouth; Logan Wolfe; Ryan Woods; Rod Workman; Dennis Wozniak; Ken Yingling; Joseph Yurkovich; Chris Zierman; Unknown Members of Tactical Team Known as "Orange Crush"; and Unknown Supervisors, as follows:

## Introduction

1. In late April 2014, on a cold day, a tactical team known as "Orange Crush" conducted a shakedown of cells at Dixon Correctional Center ("Dixon"), an Illinois Department of Corrections ("IDOC") prison in Dixon, Illinois. Rather than carry out a legitimate security procedure, however, Defendants threatened, sexually humiliated, and otherwise abused Mr. Pryor and hundreds of other prisoners, destroyed his property, and gratuitously inflicted punishment for the sole purpose of causing humiliation and needless pain. Mr. Pryor seeks

damages for his injuries, and an injunction prohibiting Defendants from inflicting such abuse during future searches.

2.     For example, Mr. Pryor and other prisoners at Dixon were subject to: a humiliating strip search in front of female officers; orders to touch their genitals and then use their unwashed hands to open their mouths; painfully tight handcuffing with their palms outward; orders to march from their housing units to another building at Dixon with their heads on the backs of the prisoners ahead of them in line so that one man's genitals were in direct contact with the next man's buttocks; violent attacks by Defendant Orange Crush Officers when prisoners broke that formation; and orders to stand in a stress position for several hours. Throughout the shakedown, Defendant Orange Crush Officers hurled epithets at the prisoners, chanted "punish the inmate," and told them this was punishment for their sins.

3.     The shakedown was the direct result of unconstitutional policies and practices in place at the IDOC pursuant to which Orange Crush conducted a series of shakedowns at various IDOC prisons, not for any legitimate penological purpose, but for the purpose of inflicting pain and humiliation on prisoners entrusted to its care.

4.     The painful and humiliating shakedown inflicted physical injuries on Mr. Pryor — including headache, dizziness, wrist pain, lower back pain, and pain in Mr. Pryor's foot—and emotional injuries—including severe embarrassment, fear, stress, trauma, and humiliation.

### Jurisdiction and Venue

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

6.     Venue is proper under 28 U.S.C. § 1391(b).  On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

## Parties

7.     Plaintiff Priest Pryor is a prisoner in the custody of the IDOC.  At all times relevant to the events at issue in this case, Mr. Pryor was housed at Dixon.

8.     Defendant Correctional Officers Joshua Alberts; Josh Andrews; Michael Atchison; Quentin Bailey; Eddy Baity; John Baldwin; Shane Boyson; Valerie Brimble; Luke Cunningham; Michael Evans; Ann Ganger; S.A. Godinez; David Gomez; Richard Graves; Peter Green III; Trent Hanrahan; Jason Harlan; Leroy Hart; Joshua Horton; Dale Hoyle; Leonta Jackson; Brady Jacobs; Tomasz Jankowski; Chad Jenkins; Terry Jensen; Alex Johnson; Nick Jones; Nicholas Kays; Zach Larson; Tyrus Lazard; Colton Love; Nicholas Lunon; Greg Manzano; Scott Meyer; Adam Morrow; Scott Nodine; Joshua Phares; Tim Prater; Louis Sapia; William Simester; David Skipworth; David Skutt; Nate Spence; Jacob Stark; Ben Sterchi; Aaron Streit-Cox; Christopher Terry; Donald Thomas; James Thomas; Chris Tuttle; David Underwood; Dale Vandusen; Adam Walsh; Dale Weis; Jason Weymouth; Logan Wolfe; Ryan Woods; Rod Workman; Dennis Wozniak; Ken Yingling; Joseph Yurkovich; and Chris Zierman (together, "Defendant Orange Crush Officers") were, at the time of the events at issue in this complaint, IDOC employees; members of the IDOC tactical team commonly referred to as "Orange Crush"; and participants in the shakedowns that occurred at Dixon.  At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

9.     Defendants Daniel Artl, a member of IDOC's statewide Tactical Response Team; Sgt. Russell Baker; Team Leader Scott Buzlaff; Lt. Tyler Crouse; Commander TJ Francis; Assistant Commander Joe McCray; Sgt. Keith Millizer; Lt. Travis Moore; Lt. Mark Newman; Sgt. Jose Prado Sr.; and Lt. Jean Solberg were, at the time of the events at issue in this complaint,

IDOC supervisors; members or supervisors of the Orange Crush team; and participants in the shakedowns that occurred at Dixon. At all times relevant to the events at issue in this case, these Defendants were acting under color of law and within the scope of their employment with the IDOC.

10. Defendants Unknown Members of Tactical Team Known as "Orange Crush" are employees of the IDOC and members of the Orange Crush team. Upon information and belief, they travel from facility to facility within the IDOC conducting shakedowns and other special procedures at IDOC facilities. At all times relevant to the events at issue in this case, Defendants Unknown Members of Tactical Team Known as "Orange Crush" were acting under color of law and within the scope of their employment with the IDOC.

11. At the time of the events at issue in this case, Defendant Nedra Chandler was the Warden at Dixon, and an employee of the IDOC. On information and belief, Chandler was responsible for supervising the shakedown at Dixon and was a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Chandler was acting under color of law and within the scope of her employment with the IDOC.

12. At the time of the events at issue in this case, Defendant Leonta Jackson was the Assistant Warden of Operations at Dixon and an employee of the IDOC. On information and belief, Defendant Jackson was responsible for supervising the shakedown at Dixon and was a supervisor in the operations chain of command during the shakedown. At all times relevant to the events at issue in this case, Defendant Jackson was acting under color of law and within the scope of her employment with the IDOC.

13. At the time of events at issue in this case, Defendant Rodney Brady was the Northern Region Tactical Commander for the IDOC and an employee of the IDOC. On

5

information and belief, Defendant Brady was responsible for supervising the shakedown at

Dixon and a supervisor in the operations chain of command during the shakedown.  At all times

relevant to the events at issue in this case, Defendant Brady was acting under color of law and

within the scope of his employment with the IDOC.

14.     Defendant Joseph Yurkovich is the former Chief of Operations for the IDOC, and

was responsible for supervising all Orange Crush tactical teams and implementing, overseeing,

and supervising policies and practices executed by Orange Crush members.  Defendant

Yurkovich acted as Command Staff with supervisory responsibilities during the shakedown.  At

all times relevant to the events at issue in this case, Defendant Yurkovich was acting under color

of law and within the scope of his employment with the IDOC.

15.     Defendant Michael Atchison is the former Deputy Chief of Operations for the

IDOC, and acted as Command Staff with supervisory responsibilities during the shakedown.  At

all times relevant to the events at issue in this case, Defendant Atchison was acting under color

of law and within the scope of his employment with the IDOC.

16.     At all times relevant to this case, Defendant David Gomez was the Northern

Region Deputy Director for the IDOC, and acted as Command Staff with supervisory

responsibilities during the shakedown.  At all times relevant to the events at issue in this case,

Defendant Gomez was acting under color of law and within the scope of his employment with

the IDOC.

17.     Defendant Unknown Supervisors are the unknown supervisors responsible for

overseeing various aspects of the shakedown described in this pleading.  Defendant Unknown

Supervisors include all supervisors in the operations chain of command during the shakedown;

all supervisors acting as Command Staff during the shakedown; and all IDOC regional

6

administrators responsible for overseeing or supervising any aspect of the shakedown described in this pleading.

18.     Defendant S.A. Godinez is the former Director of the IDOC.  He has been sued in his individual capacity.  At the time of events at issue in this case, Defendant Godinez was an employee of the IDOC and acted under color of law and within the scope of his employment.

19.     Defendant John Baldwin is the Acting Director of the IDOC.  He is sued in his official capacity as Acting Director of the IDOC.  Plaintiff asserts only claims for injunctive relief against Defendant Baldwin.  As Acting Director of the IDOC, Defendant Baldwin acts under color of law.

## Background Facts

20.     In late April and early May 2014, Dixon was put on lockdown for approximately 15 days.  During the lockdown, Defendant Orange Crush Officers conducted a shakedown of each house at the facility.

21.     On April 24, 2014, Defendant Orange Crush Officers conducted a shakedown of Housing Unit 60, in which Mr. Pryor then resided.

22.     Upon entering Housing Unit 60, Defendant Orange Crush Officers yelled loudly "get the fuck up!", and began making loud "whooping" noises while hitting their batons on the walls, tables, doors, and railings in the wing.

23.     Defendant Orange Crush Officers instructed Mr. Pryor and the other men in Housing Unit 60 to keep their heads down and not to look at the officers' faces, and threatened the men with physical violence, segregation, withholding of medical care, and transfer to a maximum security facility if they did not comply.  Two Defendant Orange Crush Officers then lined up in front of each cell.

7

24.     The Defendant Orange Crush Officers took affirmative steps to conceal their identities from Mr. Pryor and the other prisoners at Dixon, including concealing their faces with face shields and failing to wear nametags or another form of identification that would be visible to the prisoners.

25.     The Defendant Orange Crush Officers who lined up in front of Mr. Pryor's cell did not identify themselves; but Mr. Pryor recognized Defendant Orange Crush Officer Ann Ganger by her voice, as Ganger was employed at Dixon at the time.  On information and belief, the other defendant who came to Mr. Pryor's cell during the shakedown was Joe McCray.

26.     After approaching Mr. Pryor's cell, Ganger and McCray yelled "get asshole naked!"  Once Mr. Pryor was undressed, Ganger and McCray ordered him to bend over while turning his back to the officers; spread his buttocks; and lift each foot off the ground.  Ganger and McCray then ordered Mr. Pryor to face them, and to lift his genitals. Next, Ganger and McCray ordered Mr. Pryor to open his mouth using the same hands he had just used to touch his genitals and buttocks, threatening Mr. Pryor with segregation if he did not comply.

27.     Ganger, who is a woman, thus witnessed Mr. Pryor's and other male inmates' strip searches.

28.     When the Defendant Orange Crush Officers finished strip searching Mr. Pryor, they ordered him to get dressed in pants, shirt, and shoes.  The Defendant Orange Crush Officers told Mr. Pryor he could not wear any underwear.

29.     Once all the prisoners residing in Housing Unit 60 had been strip searched, Defendant Orange Crush Officers ordered the men to face the wall (with their backs to the officers) and to "keep [their] fucking heads down!"  Any prisoner who looked at the officers was slammed into the wall and told to "put [his] fucking head down!"

30. Defendant Orange Crush Officers then handcuffed Mr. Pryor and the other men in a particularly painful way: with the palms of their hands facing outward and their thumbs pointed up to the sky. The handcuffs were extremely tight, injuring Mr. Pryor's wrists, and eliciting complaints from him and other prisoners. Defendant Orange Crush Officers responded to Mr. Pryor's complaints by telling him to "shut the fuck up!" and "keep [his] fucking head down!"; and he was threatened with segregation if he did not comply.

31. Mr. Pryor and the other men were ordered to line up and told to keep their heads down. Defendant Orange Crush Officers then lined up next to the prisoners, hitting their batons in their hands, and chanting "punish the inmate." This went on for several minutes.

32. Once the chanting stopped, Defendant Orange Crush Officers grabbed the back of each prisoner's head and slammed it violently into the back of the prisoner ahead of him in line. Defendant Orange Crush Officers ordered the prisoners to stand so that one man's genitals were in direct contact with the buttocks of the man ahead of him in line—a position referred to by Defendant Orange Crush Officers as "Nuts to Butts."

33. Defendant Orange Crush Officers then shoved their batons between each prisoner's legs and jerked upwards, forcing the prisoner to straighten his legs while keeping his back bent over at a 90-degree angle onto the prisoner in front of him. This had the effect of forcing the men to place their genitals directly against the buttocks of the men in front of them. The officers then ordered the prisoners, using several epithets, to march in that formation from their housing wing to the gym at the facility. As the men began marching, the officers yelled that they didn't "want to see any fucking daylight" between any of the prisoners in line.

34. The march from the housing wing to the gym was long and painful. Each time a prisoner's head came off the back of the prisoner in front of him, officers responded by

slamming the prisoner's head into the back of the prisoner in front of him. Some prisoners were violently yanked out of the line, choked, and pulled to the ground while other officers jabbed them in their backs with batons. Each time this occurred, the line would stop moving. The frequent starts and stops of the procession, as well as the inherent difficulty of maintaining perfect contact with each other, forced several prisoners to break contact with the prisoners in front of them, causing them to be attacked by the officers. Moreover, the prisoners were not permitted to wear any outerwear, and were therefore exposed to the cold weather throughout the march.

35.     Daniel Artl, Leroy Hart, Chad Jenkins, David Skipworth, Ken Yingling were among the defendants shouting commands, screaming at the inmates, and sticking inmates with their batons during the march.

36.     When the procession of prisoners arrived at the gym, Defendant Orange Crush Officers ordered them to stand facing the wall with their heads down. They remained handcuffed. Some officers then left the gym. Defendant Orange Crush Officers Trent Hanrahan, Colton Love, Scott Meyer, Rod Workman, and others, however, remained in the gym with the prisoners.

37.     The prisoners remained standing in this stress position for several hours. During that time, Defendant Hanrahan yelled at the prisoners: "This is punishment for all your sins!" He ordered the prisoners not to ask for medical attention or water because none would be provided, and not to ask to use the bathroom because the request would be denied. He further told the prisoners that if their handcuffs were too tight, they would have to "be a man and take it or get dragged to seg[regation]!"

38.     At one point, Mr. Pryor informed one of the Defendant Orange Crush Officers in

the gym that he suffered from a chronically painful foot condition, which made standing in the stress position excruciatingly painful. The Defendant Orange Crush Officer responded with indifference, forcing Mr. Pryor to continue standing for hours.

39. After several hours, the other Defendant Orange Crush Officers returned. They lined up the prisoners in the same formation as before, and again slammed their heads into the backs of the prisoners in front of them. They again ordered the prisoners to march in that formation back to their housing wing. Just as before, if a prisoner broke the line by lifting his head off the back of the person in front of him, Defendant Orange Crush Officers reacted with violence.

40. Defendant Orange Crush Officers laughed at and taunted the prisoners throughout the entire march to and from the gym.

41. When the prisoners at last returned to their housing wing, Mr. Pryor found his cell had been "tossed" by defendants Ann Ganger and Joe McCray. Mr. Pryor, like many other prisoners, found that non-contraband items had been taken, including a photo album containing irreplaceable photographs of family members; a watch; legal documents; Mr. Pryor's social security card; and property he had legitimately purchased from the commissary at the facility. Although IDOC policies require staff to complete "shakedown slips" to document any property taken from a prisoner, Mr. Pryor found that the shakedown slip he received contained an inaccurate account of what had been taken and obscured the names of the officers who had confiscated the property. Upon information and belief, this was done intentionally, as policy, to conceal the identity of Defendant Orange Crush Officers who had participated in the shakedown.

42. Mr. Pryor suffered physical injuries as a result of the shakedown, including severe headache, dizziness, lightheadedness, blurred vision, and severe pain in his foot, neck, and lower

back caused by the march and stress test. Mr. Pryor complained about these injuries to the officers during the shakedown and march, and upon return to his cell. But he was denied medical attention.

43.    On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown procedures in April and May 2014 at several other IDOC facilities pursuant to a policy or practice implemented, overseen, and encouraged by IDOC supervisors, including Defendants Godinez, Yurkovich, and Chandler.

44.    To this day, Mr. Pryor and other IDOC prisoners are periodically subjected to shakedown procedures like the ones described in this pleading. Despite several prisoners' repeated requests that Defendants stop the abuse, Defendants continue to maintain and encourage the above-described policy or practice.

## COUNT I
### 42 U.S.C. § 1983 – Cruel & Unusual Punishment (Eighth Amendment)

45.    Mr. Pryor incorporates each paragraph of this complaint as if fully restated here.

46.    As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on Mr. Pryor. They did so intentionally, wantonly, and/or with malice.

47.    Alternatively, Defendants knew the risk of harm that their misconduct posed to Mr. Pryor and nevertheless acted with deliberate indifference in executing the shakedown at Dixon.

48.    As a result of Defendants' unjustified and unconstitutional conduct, Mr. Pryor suffered pain, emotional distress, and injuries.

49.    The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Pryor's rights.

12

50.     Mr. Pryor's injuries were proximately caused by the policies and practices of the IDOC Defendants.

51.     On information and belief, Defendant Orange Crush Officers executed their unconstitutional and cruel shakedown at Dixon pursuant to a policy or practice implemented and overseen by Defendant Yurkovich and other IDOC supervisors regarding shakedowns at IDOC facilities.  Accordingly, Defendant Yurkovich, who was responsible for supervision and oversight of Orange Crush, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of Defendant Orange Crush Officers, and failed to adequately punish and discipline prior instances of similar misconduct.  Defendant Yurkovich violated Mr. Pryor's rights by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

52.     On information and belief, Defendants Godinez, Chandler, and Yurkovich had notice of widespread policies and practices of Defendant Orange Crush Officers and other members of Orange Crush, pursuant to which prisoners were subjected to unconstitutional and tortious acts of violence and humiliation, as described more fully above.  Despite knowledge of these problematic policies and practices, these Defendants did nothing to ensure that prisoners at Dixon were treated humanely and in accordance with the rights afforded to them by the United States Constitution.  These widespread policies and practices were allowed to flourish because Defendants Godinez, Chandler, and Yurkovich directly encouraged the very type of misconduct at issue in this case, and failed to provide adequate training and supervision of Orange Crush team members.  In this way, Defendants Godinez, Chandler, and Yurkovich violated Mr. Pryor's rights by maintaining and implementing policies and practices that were the moving force driving the foregoing constitutional violations.

13

53.     The above-described policies and practices were able to exist and thrive because Defendants Godinez, Chandler, and Yurkovich were deliberately indifferent to the problem, thereby effectively ratifying it.

54.     Mr. Pryor's injuries were caused by employees of the IDOC, including but not limited to the individually named Defendants, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this Count.

55.     Defendants continue to this day to perform shakedowns at Dixon using the unconstitutional and cruel methods described more fully above.  Accordingly, Mr. Pryor seeks injunctive relief to stop the continuing constitutional violation.

56.     Mr. Pryor also seeks actual and punitive damages.

<u>**COUNT II**</u>
**42  U.S.C. § 1983 – Denial of Medical Treatment (Eighth Amendment)**

57.     Mr. Pryor incorporates each paragraph of this complaint as if fully restated here.

58.     As described more fully above, during the shakedown, Defendant Orange Crush Officers had notice of Mr. Pryor's medical needs and the seriousness of those medical needs, and knew the risk of harm to Mr. Pryor if he did not receive appropriate medical care.  Despite that knowledge, Defendant Orange Crush Officers failed to provide him with a chair, proper medical care, or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

59.     As a result of Defendant Orange Crush Officers' unjustified and unconstitutional conduct, Mr. Pryor experienced pain, suffering, emotional distress, and injury.

60.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Pryor's rights.

14

61.     Alternatively, Defendant Orange Crush Officers were deliberately indifferent to Mr. Pryor's objectively serious medical needs, and their actions were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Pryor's rights.

62.     Defendant Orange Crush Officers' conduct was the proximate cause of Mr. Pryor's injuries.

63.     Mr. Pryor seeks actual and punitive damages for Defendants' violation of his constitutional rights.

**COUNT III**
**42 U.S.C. § 1983 – Conspiracy**

64.     Mr. Pryor incorporates each paragraph of this complaint as if fully restated here.

65.     Defendants reached an agreement among themselves to deprive the prisoners housed at Dixon of their constitutional rights and to protect one another from liability for depriving the prisoners of their rights, as described in this complaint.

66.     In furtherance of the conspiracy, each co-conspirator committed overt acts and was an otherwise willful participant in joint activity.

67.     The misconduct described in this Count was undertaken intentionally, with malice, and/or with reckless indifference to Mr. Pryor's rights.

68.     As a direct and proximate result of the illicit prior agreement referenced above, Mr. Pryor's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

69.     These injuries were caused by IDOC employees, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described above.

70.     Defendants continue to this day to conspire to deprive Mr. Pryor of his constitutional rights and to protect one another from liability for the deprivation of those rights, as described in this complaint.  Accordingly, Mr. Pryor seeks injunctive relief to stop the continuing constitutional violation.

71.     Mr. Pryor also seeks actual and punitive damages.

### COUNT IV
### 42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)

72.     Mr. Pryor incorporates each paragraph of this complaint as if fully restated here.

73.     As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of Mr. Pryor's constitutional rights had they been so inclined.  They failed to do so.

74.     Defendants' actions were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Pryor's rights.

75.     As a direct and proximate result of Defendants' misconduct, Mr. Pryor's rights were violated and he suffered injuries, including pain, suffering, and emotional distress.

76.     Mr. Pryor's injuries were caused by IDOC employees, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

77.     Mr. Pryor seeks actual and punitive damages for Defendants' violation of his constitutional rights.

### COUNT V
### Intentional Infliction of Emotional Distress

78.     Mr. Pryor incorporates each paragraph of this complaint as if fully restated here.

16

79. In the manner described more fully above, Defendants engaged in extreme and outrageous conduct. Defendants' actions were rooted in an abuse of power or authority.

80. Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability the conduct would inflict severe emotional distress, and with reckless disregard of that probability.

81. Defendants' actions as set forth above were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Pryor's rights.

82. Defendants undertook the misconduct described in this Count within the scope of their employment.

83. As a direct and proximate result of this misconduct, Mr. Pryor experienced injuries, severe emotional distress, and suffering.

WHEREFORE, Plaintiff Priest Pryor respectfully requests this Court enter a judgment in his favor and against Defendants awarding compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs, and any other relief this Court deems just and appropriate.

## **JURY DEMAND**

Plaintiff Priest Pryor hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: January 26, 2018                    Respectfully submitted,

                                                          PRIEST PRYOR

                                                           By: */s/ Alison R. Leff*_____
                                                              One of His Attorneys

                                                           Timothy E. Kapshandy
                                                           Alison R. Leff
                                                           SIDLEY AUSTIN LLP

17

1 S. Dearborn St.
Chicago, IL 60603
(312) 853-7000
tkapshandy@sidley.com
aleff@sidley.com

*Attorneys for Plaintiff*